1    ANNETTE D. KIRKHAM, State Bar No. 217958
     annettek@lawfoundation.org
2    KIM PEDERSON, State Bar No. 234785
     kimp@lawfoundation.org
3    LAW FOUNDATION OF SILICON VALLEY
     FAIR HOUSING LAW PROJECT
4    111 West Saint John Street, #315
     San Jose, CA 95113
5    Telephone:      (408) 280-2410
     Facsimile:      (408) 293-0106
6

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13   BERNARDO REYES,                        Case No. C08-04606 RS

14                      Plaintiff,          **PLAINTIFF BERNARDO REYES'**
                                            **OPPOSITION TO DEFENDANT**
15              v.                          **WACHOVIA MORTGAGE, FSB'S**
                                            **MOTION TO DISMISS PLAINTIFF'S**
16   PREMIER HOME FUNDING, INC., a          **COMPLAINT**
     California corporation, WORLD SAVINGS
17   BANK, FSB, WACHOVIA BANK, N.A.,        **FRCP 12(b)(6); FRCP 9(b)**
     and JOEL MADERA CANDELARIO,
18                                          Date: March 23, 2009
                        Defendants.         Time: 9:30 a.m.
19                                          Place: Courtroom

20                                          Honorable James Ware

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

I. Introduction...............................................................................................................1

II. Relevant Allegations of the Complaint................................................................2

III. Legal Standard for Motion to Dismiss................................................................4

IV. Argument ................................................................................................................5

A. Mr. Reyes' Complaint Sufficiently Pleads a Cause of Action against Wachovia

for Violations of California Civil Code Section 1632.................................5

1. HOLA does not preempt Mr.Reyes' 1632 Cause of Action.........................5

2. Mr. Reyes' has Sufficiently alleged Wachovia's Violation of California's Civil

Code Section 1632 and Therefore the Court Should Not Dismiss the Second Cause

of Action............................................................................................7

B. Mr. Reyes Complaint Sufficiently Pleads his Rescission Claims against

Wachovia.........................................................................................10

C. Mr. Reyes has Sufficiently alleged Wachovia's Violation of the Real Estate

Settlement Procedures Act.....................................................................11

D. HOLA Does Not Preempt Mr. Reyes' Business and Professions Code Section

17200 Cause of Action.........................................................................13

E. Mr. Reyes Does Not Assert a Cause of Action for Fraud against Wachovia...14

F. Mr. Reyes' Complaint Sufficiently Pleads a Cause of Action against Wachovia

for Negligence....................................................................................14

1. Mr. Reyes' Cause of Action for Negligence is Not Preempted by HOLA......15

2. Mr. Reyes' is Owed a Duty of Care by Defendants................................15

i

G.  Mr. Reyes Voluntarily Dismisses his Unjust Enrichment Claim against

Wachovia...................................................................................16

H.  Should the Court determine that Mr. Reyes has failed to properly allege any of

the claims above, it should grant him leave to amend.................................16

V.  Conclusion ...............................................................................................16

## TABLE OF AUTHORITIES

### U.S. SUPREME COURT CASES

*Davis v. Scherer*, 468 U.S. 183 (1984)............................................................5

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..........................................................5

### FEDERAL CASES

*Barquis v. Merchants Collection Ass'n of Oakland*, 7 Cal. 3d 94

(1972)...........................................................................................................13

*Bjustrom v. Trust One Mortgage Corp.*, 322 F. 3d 1201 (9th Cir. 2003)....................12

*Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336 (9th Cir. 1996)...................................5

*Dougherty v. Hoolihan, Neils and Boland, LTD.*, 531 F. Supp. 717 (D. Minn.

1982)............................................................................................................10

*Greenberg v. Sala*, 822 F. 2d 882 (9th Cir. 1987)..............................................16

*Lilley v. Charren*, 936 F. Supp. 708 (N.D. Cal. 1996)........................................16

*Lopez v. Smith*, 203 F. 3d 1122 (9th Cir. 2000)..................................................5

*Munoz v. International Home Capital*, 2004 U.S. Dist. LEXIS 26262.....................10

*Palmer v. Wilso*n, 502 F. 2d 860 (9th Cir. 1974)...............................................10

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F. 3d 517 (9th Cir. 1994).....................5

*Perfect 10, Inc. v. Vista Int'l Serv. Ass'n.*, 494 F. 3d 78 (9th Cir. 2007)..................4

*Ruiz v. Decision One Mortgage Company*, 2006 U.S. LEXIS 54571 (N.D. Cal.

2006)...........................................................................................................15

*Schuetz v. Bank One Mortgage Corp.*, 292 F. 3d 1004 (9th Cir. 2002)............12

*Silvas v. E\*Trade Mortgage Corp.*, 2006 U.S. Dist. LEXIS 15565 (S.D. Cal. 2006)

.............................................................................................................6, 13

*Yamamoto v. Bank of NY*, 329 F.3d 1167 (9th Cir. 2003)....................................10

## STATE COURT CASES

*Cel-Tech Communications, Inc. v. Los Angles Cellular Tel. Co., 20 Cal. 4th 163* (1999)……………………………………………………………………………………13

*Dillon v. Legg*, 68 Cal.2d 728 (1968)……………………………………………………15

*Fenning v. Glenfeld*, 40 Cal. App. 4th 1285 (1995)………………………………………..6

*Gibson v. World Savings & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002)………6, 13, 14

*Hussey-Head v. World Savings & Loan*, 111 Cal. App. 4th 773 (2003)…………………6

*Lopez v. World Savings & Loan Assn.*, 105 Cal. App. 4th 729, (2003)…………………14

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006)……………………………………………………………………………13, 14

*Rokos v. Peck*, 182 Cal. App. 3d 604 (1986)………………………………………11, 12

*Wagner v. Benson*, 101 Cal. App. 3d 27 (1980)…………………………………………..15

*Washington Mutual v. Superior Court*, 75 Cal. App. 4th 773, 786 (1999)………………16

## FEDERAL STATUTES

12 U.S.C. § 2601……………………………………………………………………………11

12 U.S.C. § 2607……………………………………………………………………………11

12 U.S.C. § 1831……………………………………………………………………………11

15 U.S.C. § 1601………………………………………………………………………………9

## FEDERAL REGULATIONS

12 C.F.R. § 560.2 …………………………………………………………………6, 13

24 C.F.R. § 2603……………………………………………………………………………11

24. C.F.R. § 2607……………………………………………………………………………11

24 C.F.R. § 3500……………………………………………………………………………11

64 Fed. Reg. at 10,084………………………………………………………………11, 12

**FEDERAL RULES**

Fed. R. Civ. Pro 12……………………………………………………………………4

Fed. R. Civ. Pro 41……………………………………………………………………16

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1632…………………………………………………………5, 7, 8 9

Cal. Bus. & Prof Code § 10131……………………………………………………8

Cal. Bus. & Prof Code § 10240……………………………………………………8, 9

Cal. Bus. & Prof Code § 10241……………………………………………………8

Cal. Bus. & Prof Code § 10245……………………………………………………9

Cal. Bus. & Prof Code § 10248.3……………………………………………………7

1

**INTRODUCTION**

2   Plaintiff Bernardo Reyes (hereinafter "Mr. Reyes") was fraudulently induced into

3   refinancing his existing home mortgage in October 2007 by a mortgage broker acting in concert

4   with a mortgage lender. The complaint in the instant action details these unfortunate events and

5   alleges claims against Wachovia Mortgage FSB (hereinafter "Wachovia"), Premier Home

6   Funding (hereinafter "Premier"), and Joel Madera Candelario (hereinafter "Candeario") for this

7   fraudulent transaction.

8   At issue in the instant motion, are Wachovia's request for this court to dismiss Mr. Reyes'

9   claims for violations of California Civil Code section 1632, California Business and Professions

10   Code section 17200 (hereinafter "UCL") and the Real Estate Settlement Procedures Act

11   (hereinafter "RESPA"). Wachovia also alleges that Mr. Reyes' causes of action for negligence

12   and unjust enrichment must be dismissed and finally that Mr. Reyes' prayer for rescission from

13   Wachovia should be dismissed from his complaint.

14   Wachovia argues that the Home Owners' Loan Act, 12 U.S.C. section 1461 *et seq*

15   (hereinafter "HOLA") preempts Mr. Reyes' consumer protection claims. However, the law is

16   clear that laws of general applicability, which neither discriminate against national banks nor

17   specifically regulate the business of lending, are not preempted.

18   Contrary to Wachovia's characterizations, Mr. Reyes' claims fall beyond the reach of

19   HOLA preemption. The state law claims under which Mr. Reyes brings his claims are traditional

20   areas of state regulation and do not interfere with the ability of Wachovia to conduct the business

21   of banking or making loans. Instead, they are laws of general applicability to protect consumers

22   from deceptive, unfair and unlawful business practices. The fact that Wachovia is a federally

23   insured lending institution does not immunize it from conduct which is illegal under California

24   law. Accordingly, Wachovia's motion to dismiss Mr. Reyes' causes of action for violations of

25   California Civil Code section 1632, California Business and Professions Code section 17200,

26   Real Estate Settlement Procedures Act, rescission, and negligence must be denied.

27   Mr. Reyes voluntarily dismisses his cause of action for unjust enrichment against

28   Wachovia. Finally, Mr. Reyes has not alleged a cause of action for fraud against Wachovia, thus

PLAINTIFF OPPOSITION TO DEFENDANT WACHOVIA
MORTGAGE FSB'S MOTION TO DISMISS
C08-04606 JW

1   Mr. Reyes does not address Wachovia's FCRP Rule 9(b) argument.

2   **I.   RELEVANT ALLEGATIONS OF THE COMPLAINT**

3   Bernardo Reyes is a forty-four year old man who has owned his home at 14030

4   Aldo Court in San Jose, California since 2000. Compl. ¶ 16. Mr. Reyes was born and raised in

5   Mexico. *Id.* ¶ 17. Mr. Reyes received an education through the third grade. *Id.* Mr. Reyes is a

6   monolingual Spanish-speaker who reads and writes almost no English. *Id.* In August 2007, Mr.

7   Reyes received a letter from defendant Premier urging him to refinance at a low interest rate

8   because his monthly mortgage payment was about to increase. *Id.* ¶ 18. Because the interest rate

9   on Mr. Reyes' existing loan was scheduled to increase in early November and because the letter

10  indicated that Mr. Reyes was eligible for monthly payments as low as $1,200, Mr. Reyes and his

11  wife, Olga Salazar decided to call Premier to discuss the possibility of refinancing. *Id.*

12  Defendant Candelario answered the telephone in Spanish, and addressed this and all future

13  communications to Mr. Reyes and Ms. Salazar regarding the refinance loan exclusively in

14  Spanish. *Id.* ¶ 19.

15  During the initial discussion with defendant Candelario, Ms. Salazar explained that

16  she had received the letter, that the introductory interest rate on their current loan was about to

17  expire, and that they wanted to see if they could refinance to get a lower monthly payment, as

18  described in the letter. *Id.* ¶ 20. Mr. Reyes' existing loan on the property totaled approximately

19  $339,000, and had a monthly payment of approximately $1,550, with principal and interest

20  included. *Id.* Defendant Candelario responded by saying not only could he would lower the

21  monthly payment, but he could also get Mr. Reyes $30,000 cash out of the house. *Id.* ¶ 21.

22  Candelario also explained that because he was a direct representative of World Savings Bank, he

23  would be able to procure an affordable loan for Mr. Reyes, and fees would be limited to $4,000.

24  Further, Candelario promised that the loan would have a fixed interest rate for the first five years

25  and no prepayment penalty. *Id.*

26  Within a week's time, Candelario called back and spoke with Ms. Salazar. *Id.* ¶

27  23. Candelario said that he could procure a refinance loan for Mr. Reyes with a fixed payment of

28  less that $1,530 per month for a period of five years, principal and interest included, that there

1  would be no prepayment penalty, that Mr. Reyes would receive $30,000 cash out from the loan,

2  and that fees would be limited to $4,000. *Id.* When Ms. Salazar called Candelario back,

3  Candelario answered the telephone by saying, "World Savings Bank, can I help you?" *Id.* ¶ 26.

4  Ms. Salazar then told Candelario that Mr. Reyes wanted to go ahead with the loan. Candelario

5  said that he would prepare the papers and get back to them soon. *Id.* During the month of

6  September, when Ms. Salazar called Candelario to inquire about the progress of the loan,

7  Candelario answered the phone by saying, "World Savings Bank, can I help you?" *Id.*¶ 28.

8  Candelario then assured Ms. Salazar that the papers were being processed, that Mr. Reyes would

9  be able to lower his monthly payments, and that there was nothing to worry about. *Id.*

10         Although the loan had been negotiated exclusively in Spanish, the loan documents

11  were written in English, and no written translation was provided. *Id.* ¶ 31. Prior to the closing,

12  Mr. Reyes did not receive any documents related to the refinance loan. *Id.* Unbeknownst to Mr.

13  Reyes at the time, the actual terms in the loan documents that he signed were different than the

14  terms promised to him by Candelario. *Id.* ¶ 33. Also, unbeknownst to Mr. Reyes, the loan

15  documents provided for broker's fees to defendant Premier totaling $14,912.50, not $4,000 as

16  promised. *Id.* ¶ 35. Of the total broker fees paid to defendant Premier, $7,412.50 were paid

17  directly through Mr. Reyes's loan transaction. In addition, defendant World Savings paid

18  defendant Premier a Yield Spread Premium of $7,500. Together, these fees earned by defendant

19  Premier total approximately 3.97% of the total mortgage amount. *Id.*

20         On October 11, 2007, Ms. Salazar received a call from Defendant Candelario. *Id.*

21  ¶ 38. He told her that there were some papers that needed to be signed immediately, or the loan

22  would not go through. *Id.* Candelario then arranged that he would send Ms. Salazar the

23  documents via Western Union, and the she should sign and return them by fax. *Id.* Ms. Salazar

24  followed Candelario's instructions, going to Western Union and signing the English-language

25  documents, even though she is not a signatory on the Note. *Id.* ¶ 39. She then immediately faxed

26  the documents back to Candelario. *Id.* Weeks later, when Mr. Reyes finally received copies of

27  these documents, he learned that the documents signed by his wife at Candelario's direction were

28  actually two disclosures required by the Truth in Lending Act: the Notice of Right to Cancel and

1   the Truth In Lending Disclosure for the refinance loan. *Id.* Mr. Reyes was not provided with a

2   copy of his Notice of Right to Cancel at the time that he signed the loan paperwork on October 5,

3   2007. *Id.* Additionally, the Notice of Right to Cancel was signed and returned by Ms. Salazar,

4   who was not a signatory on the loan, at the request of Candelario on October 11, 2007, was

5   provided outside of the three-day window in which Mr. Reyes could have exercised his right to

6   cancel the loan. *Id.*

7           In early November 2007, Mr. Reyes finally received, from the title company,

8   copies of the documents that he signed at closing on October 5, 2007. *Id.* ¶ 45. This package of

9   documents contained two different Truth in Lending Act Disclosures – both signed and dated by

10  Mr. Reyes on October 5, 2007 - reflecting dramatically different loan terms. *Id.* The first Truth

11  in Lending Disclosure states that it was prepared by Premier Group Lending, Inc. on September

12  13, 2007. *Id.* ¶ 46. It shows an Annual Percentage Rate of 2.75%, a Finance Charge of $171,429,

13  an Amount Financed of $365,000 and a Total of Payments of $536,429. *Id.* In addition, it

14  reflects relatively stable payments over the 360 months of the loan, with 359 payments of

15  $1,490.08 and one final payment of $1,490.28. *Id.* The second Truth in Lending Disclosure

16  statement contains wildly different loan terms than the first. *Id.* ¶ 47. This document appears to

17  have been prepared on October 5, 2007 and bears the name "World Savings" across the top of the

18  page. *Id.* It discloses an Annual Percentage Rate of 8.459%, a Finance Charge of $850,383.36,

19  an Amount Financed of $364,220.54 and a Total of Payments of $1,214,603.90. *Id.* In addition,

20  it reflects monthly payments that steadily increase from $1,530.91 to $2,935.14 over the first

21  nine-and-a-half years of the loan, and then leveling off at $3,948.41 for the remainder of the 30-

22  year term. *Id.*

23          **II.    LEGAL STANDARD FOR MOTIONS TO DISMISS**

24          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will not be granted

25  unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim

26  which would entitle him to relief. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794

27  (9th Cir. 2007).

28

-4-

1    The issue presented by such a motion is not whether the plaintiff will prevail in the action,

2    but whether the plaintiff is entitled to offer evidence in support of its claims. *See Scheuer v.*

3    *Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183

4    (1984).

5    The court must construe the complaint in the light most favorable to the plaintiff,

6    accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in

7    plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Usher v.*

8    *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Courts must assume that all general

9    allegations embrace whatever specific facts might be necessary to support them. *Peloza v.*

10   *Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

11   If the Court dismisses any claim for relief, it must then consider whether to grant leave to

12   amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend

13   even if no request to amend the pleading was made, unless it determines that the pleading could

14   not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

15   Cir. 2000) (citation and quotation marks omitted).

16                                **III.    ARGUMENT**

17

18       **A.    Mr. Reyes' Complaint Sufficiently Pleads a Cause of Action against
                 Wachovia for Violations of California Civil Code Section 1632.**

19   Wachovia contends that Mr. Reyes' cause of action for violation of California Civil

20   Section 1632 should be dismissed for the following two reasons: (1) HOLA preempts section

21   1632 and (2) Section 1632 does not apply to Mr. Reyes' loan with Wachovia.

22              **1.    HOLA does not preempt Mr. Reyes' 1632 Cause of Action.**

23   California Civil Code Section 1632 (hereinafter "Section 1632") provides that any person

24   engaged in a trade or business who negotiates a contract in one of the statute's enumerated

25   languages must deliver a translation of the contract in the language in which it was negotiated.

26   Spanish is one of the enumerated languages. Cal. Civ. Code § 1632(a)(1). Wachovia argues that

27   state laws that interfere with the core lending functions of federal savings associations such as

28

                                      - 5 -

1   Wachovia Mortgage are preempted by HOLA and that Section 1632 with its foreign language

2   requirement is exactly the type of state law HOLA preempts. (Wachovia Mem. P.& A. Mot. To

3   Dismiss at 2-3).

4          However, HOLA expressly provides that state laws dealing with contract or commercial

5   law are not preempted by the statute. 12 C.F.R. § 560.2(c)(1). Section 1632 is essentially a

6   contract law. Section 1632 does not specifically apply to lenders or banks, but applies to nearly

7   all commercial contracts negotiated in one of the five specified languages. It regulates how

8   commercial dealings occur to prevent fraud. The statute does not target lending institutions. The

9   statute requires translation for leases and legal services' agreements in addition to extensions of

10  credit or loans. See Cal. Civil Code 1632 (b). See also Hussey-Head v. World Savings and Loan,

11  111 Cal. App. 4th 773, 782. (2003)(the regulation at issue was not preempted by HOLA as it did

12  not specifically target lending institutions, but insured credit information was reported fairly and

13  accurately). Therefore, it is a law regulating contracts and commercial dealings, which is one of

14  the exceptions to preemption under HOLA. See 12 U.S.C. § 560.2(c).

15         Wachovia cites Silvas v. E*Trade Mortgage Corp. as authority for its argument that

16  HOLA preempts Mr. Reyes' cause of action under Section 1632. However, the Silvas court

17  clearly announced that "UCL claims alleging predicate acts that were violations of the general

18  legal duties with which every business must comply" survive claims of preemption by HOLA.

19  Silvas v. E*Trade Mortgage Corp., 2006 U.S. Dist. LEXIS 15565 at 13. Section 1632 does not

20  target lending institutions, but as noted above, is a broad statute with general applicability and

21  regulates contracts and commercial dealings to prevent predicate acts, like fraud, and as such is

22  not preempted by HOLA. Therefore, contrary to Wachovia's assertion, Silvas does not support

23  preemption of Mr. Reyes' cause of action under section 1632.

24         Numerous cases support the notion that if a regulation is aimed at ensuring a business

25  operates without fraud and deception, then it is not preempted by HOLA. See Fenning v.

26  Glenfeld, 40 Cal. App 4th 1285, 1299 (1995)(a state cannot dictate to the Bank how it can or

27  cannot operate but it can insist that, however the bank chooses to operate, it do so free from fraud

28  and other deceptive practices); see also Gibson v. World Savings & Loan Ass'n, 103 Cal. App. 4th

- 6 -

1   1291, 1303 (2002).

2         Section 1632 was enacted to prevent fraud and deceptive practices. The statute states

3   "This section was enacted in 1976 to increase consumer information and protections for the

4   state's sizeable and growing Spanish-speaking population." Cal. Civil Code 1632 (a)(2). The

5   law does not purport to regulate how a federal savings association runs its business. Since the

6   law is concerned with protecting vulnerable communities from deceptive practices and since it is

7   a broad statute, it follows that HOLA does not preempt Section 1632.

8

9         2.    **Mr. Reyes has sufficiently alleged Wachovia's violation of California's**
               **Civil Code Section 1632 and therefore the Court should not dismiss the**
10              **third cause of action.**

11        Paragraphs 6 and 55 of the Complaint allege a general agency relationship between

12  Wachovia and the mortgage brokers. Moreover, paragraphs 21, 26, and 28 allege that defendant

13  Candelario represented that he was an agent of World Savings. The complaint alleges that all

14  aspects of the subject transaction were negotiated in Spanish but all of the documentation was in

15  English. (Compl. at ¶¶ 19, 31, 32, 72). Requesting dismissal of the section 1632 claim,

16  Wachovia contends section 1632 does not apply to the loan Mr. Reyes received from World

17  Savings.

18        However, Wachovia's analysis overlooks the fact that section 1632 specifically applies to

19  loans that are secured by real property and *negotiated by brokers*. In relevant part, § 1632 applies

20  to:

21                    ...a loan or extension of credit for use primarily for personal,
                      family or household purposes where the loan or extension of
22                    credit is subject to the provisions of Article 7 (commencing with
                      Section 10240 of Chapter 3 of Part 1 of Division 4 of the
23                    Business and Professions Code.

24  Cal. Civ. Code § 1632(b)(4).[1]  Section 10248.3 is the final section within Article 7 of Chapter 3

25  of Part 1 of Division 4 of the California Business and Professions Code and expressly states that

26  Article 7 is *only* applicable to loans made or negotiated by real estate brokers:

27  _____

28  [1]   Article 7 is within Part 1 of the California Business and Professions Code which specifically relates to
    "Licensing of Persons." Thus Part 1 regulates the activities of licensed brokers.

                                          - 7 -

§ 10248.3. Loans to which article applicable

> The provisions of this article shall apply only to those loans
> otherwise subject to this article which are made or negotiated by
> real estate brokers acting within the meaning of subdivision (d)
> of Section 10131 or subdivision (b) of Section 10240.

Cal. Bus. & Prof. Code § 10248.3. Reading all of the interrelated statutes together highlights the fact that the loans at issue in the instant case fall squarely within section 1632's coverage and that the legislature intended that section 1632 consumer protections be enforceable against lenders when the loans are negotiated by a real estate broker.

In the case at bar, it is even more clear that section 1632 is applicable because the Complaint alleges general and specific agency among the defendants. *See* Complaint ¶¶ 6, 21, 26, 28, and 55. Consequently, the broker's activities are generally attributable to Wachovia and therefore Mr. Reyes' is entitled to rescission of the World Savings loan under section 1632.

Wachovia argues that "California Civil Code Section 1632(b)(2) excludes loans secured by real property, like the one at issue here." (Wachovia Mem. P. & A. Mot. Dismiss at 9). While this paragraph generally exempts loans "secured . . . by real property" from coverage, paragraph (4) of the statute, brings the transactions at issue in this case within the purview of section 1632. That paragraph provides that, "[n]otwithstanding paragraph (2),"

> a loan or extension of credit for use primarily for personal, family or household
> purposes where the loan or extension of credit is subject to the provisions of
> Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of
> the Business and Professions Code. . .

is covered. The cited article of the Business and Professions Code covers loans secured by real property and negotiated by a real estate broker who:

> Solicits borrowers or lenders for or negotiates loans or collects payments or performs
> services for borrowers or lenders or note owners in connection with loans secured
> directly or collaterally by liens on real property or on a business opportunity.

Cal. Bus. & Prof. Code §§ 10240-10248.3, 10131(d).

Division 4, Part 1, Chapter 3, Article 7 of the California Business and Professions Code appears at sections 10240-48. At the heart of Article 7 is section 10240, which requires real estate brokers who negotiate loans that are secured by real property to deliver a "good faith

- 8 -

1  estimate" to borrowers before they become obligated on their loan notes. This estimate must

2  include the disclosures required by the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, or

3  the equivalent of those disclosures. Cal. Bus. & Prof. Code § 10240; *see also* Cal. Bus. & Prof.

4  Code § 10241.

5        Specifically, the language compelling "[e]very real estate broker . . . who negotiates a loan

6  to be secured directly or collaterally by a lien on real property" to deliver disclosure statements

7  reveals that home mortgage loans negotiated by real estate brokers *are* subject to the provisions of

8  section 10240. Cal. Bus. & Prof. Code § 10240(a). Since the sections that follow section 10240

9  in Article 7 serve to illuminate the provisions set out in section 10240 itself, it follows that real

10  estate brokers who negotiate home mortgage loans are subject to the entirety of Article 7. *See*

11  Cal. Bus. & Prof. Code § 10241-48. The fact that only brokered mortgage loans are covered

12  ensures that the general rule that real property loans are not covered by 1632 is not subsumed by

13  the exception in paragraph (4).

14        Later in Article 7 appears section 10245, which states that most of the provisions of

15  Article 7 do not apply to loans secured by first trust deeds with principal loan amounts of $30,000

16  or more. Cal. Bus. & Prof. Code § 10245. However, section 10245 specifically excepts section

17  10240 from this limitation, stating: "The provisions of [Article 7], **exclusive of the provisions of**

18  **Sections 10240**, 10242.5, and 10242.6, do not apply to any bona fide loan secured directly or

19  collaterally by a first trust deed" (emphasis added). *Id.*

20        Therefore, section 10240 applies to all loans negotiated by real estate brokers that are

21  "secured directly or collaterally by a lien on real property," regardless of whether those loans are

22  first trust deeds whose principal is $30,000 or more. Cal. Bus. & Prof. Code § 10240(a). And

23  because section 1632 covers loans subject to the provisions of Article 7 of Chapter 3 of Part 1 of

24  Division 4 of the California Business and Professions Code (i.e., Cal. Bus. & Prof. Code §§

25  10240-48), home mortgage loans negotiated by real estate brokers are within the scope of section

26  1632. Cal. Civ. Code § 1632(a)(4); *see* Cal. Bus. & Prof. Code § 10240.

27        Wachovia further contends that the Court erred in its decision in *Munoz* finding that Civil

28  Code section 1632 applies to real estate loans above $30,000. However, as the *Munoz* decision

1  rightly points out, plaintiff's complaint does not implicate the statutory maximum in section
2  10245 because the transaction involved is expressly excluded as falling within section 10240. *See*
3  *Munoz v. International Home Capital*, 2004 U.S. Dist. LEXIS at 26262. The loan at issue in this
4  case falls squarely within the definition of section 10240; the complaint sets forth the mortgage
5  brokering activities of the Premier defendants in detail. *See* Compl. ¶¶ 18-32; 38 and 39. Thus,
6  when section 1632 is read more completely and in conjunction with related statutes, it is clear that
7  it does indeed apply to the loan at issue here.

8
9          **B.     Mr. Reyes' Complaint Sufficiently Pleads his Rescission Claims against Wachovia**

10          Because rescission under TILA is an equitable remedy, courts *may* condition
11  rescission upon return to the creditor of property or money received or the reasonable value of the
12  property. *See Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974). However, courts are not
13  obligated to impose such a condition. *Dougherty v. Hollihan, Neils and Boland, LTD*, 531 F.
14  Supp. 717 (D. Minn. 1982). Whether a decree of rescission should be conditional depends upon
15  "the equities present in a particular case, as well as consideration of the legislative policy of full
16  disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private
17  enforcement provisions of the Act." *Palmer*, 502 F.2d at 862.

18          Wachovia relies on *Yamamoto v. Bank of NY*, 329 F.3d 1167 (9th Cir. 2003) to
19  support its proposition that Mr. Reyes must provide meaningful allegations in his complaint to
20  demonstrate that he is able and willing to do "equity" by tendering restitution of the full $375,000
21  indebtedness. (Wachovia Mem P&A Mot to Dismiss at 12). In *Yamamoto*, the appellate court
22  found that the district court had the *discretion* to condition rescission on tender of the proceeds in
23  a motion for *summary judgment*. *See Id.* at 1171 (emphasis added). There is no case interpreting
24  Truth In Lending Act as requiring a plaintiff to demonstrate his ability to tender the proceeds as a
25  condition of rescission.

26          Courts have only imposed such a condition when the "balance of the equities" has so
27  demanded; i.e., when the defendant's Truth In Lending violation was not egregious and allowing
28  the defendant to collect the loan proceeds would not undermine "the remedial-penal nature of the

1    private enforcement provisions of the Act." *Palmer*, 502 F.2d at 862. Balancing the equities is

2    inappropriate in a motion to dismiss.

3

4          **C.    Mr. Reyes has sufficiently alleged Wachovia's violation of the Real Estate**
               **Settlement Procedures Act and therefore the Court should not dismiss**

5              **the second cause of action.**

6         In arguing that Mr. Reyes' Real Estate Settlement Procedures Act (RESPA) claim, should

7    be dismissed, Wachovia states Mr. Reyes' complaint is defective because it appears to allege a

8    per se unreasonability of the YSP paid by Wachovia Mortgage, together with the commission

9    paid by the borrower. (Wachovia Mem. P. & A. Opp. Mot. Dismiss at 14). However, Mr. Reyes'

10   claim adequately pleads RESPA.

11        The purpose of RESPA is to protect consumers from unnecessarily high settlement

12   charges and abusive practices that have developed in the residential real estate industry. *See* 12

13   U.S.C. §§ 2601-17, § 1831b. Among other cost disclosure provisions, RESPA requires that no

14   later than three business days after applying for a loan, the consumer must be given a "good faith

15   estimate" of settlement costs (charges that will be listed on a form called the HUD-1 and charges

16   that the borrower will normally pay based on common practice in the locality of the mortgaged

17   property). 12 U.S.C. § 2603; 24 C.F.R. § 3500.7. In addition to requiring disclosures, RESPA

18   prohibits "kickbacks"—a fee for the referral of a settlement service—and paying and receiving

19   unearned fees. *See* 12 U.S.C. § 2607; 24 C.F.R. § 3500.14. The regulation also bans splitting

20   any charges made or received for the rendering of settlement services in connection with a

21   covered loan other than for services actually performed. 24 C.F.R. § 3500.14 (c).

22        Although mere referrals are not compensable, fees for goods or services actually rendered

23   are legal. 12 U.S.C. § 2607 (c); 24 C.F.R. § 3500.14 (c) and (g). However, the payment must

24   bear a reasonable relationship to the market value of the goods furnished or services provided. 24

25   C.F.R. § 3500.14 (g)(2). If a fee is excessive, then "the excess is not for services or goods

26   actually performed or provided;" in that case, the fee is unearned and therefore illegal. 24 C.F.R.

27   § 3500 (g)(2).

28        Further, a yield spread premium (YSP)—which is a payment made by a lender to a broker

1    for delivering a loan with a higher interest rate—may be an illegal kickback. In determining this,

2    the first question is whether goods and services were actually delivered or performed for the

3    compensation paid. 64 Fed. Reg. at 10,084. In addition to taking information from the borrower

4    and filling out an application, federal law specifies that a broker would have to perform at least

5    five additional tasks to show that the YSP was legitimate. *See Id.* at 10,085.[2] However,

6    counseling-type activities that were, in actuality, steering, would not justify a fee. *Id.* In

7    analyzing transactions, HUD would find that no steering occurred if: (1) counseling gave the

8    borrower the opportunity to consider products from at least three different lenders; (2) the entity

9    performing the counseling would receive the same compensation regardless of which lender's

10    products were ultimately selected; and (3) any payment for counseling was reasonably related to

11    the services performed and not based on the amount of loan business referred to a particular

12    lender. *Id.* The 9th Circuit in *Schuetz v. Bank One Mortgage Corp.* described its analysis of

13    whether a YSP is an impermissible kickback as follows:

> Total compensation includes fees paid by a borrower and any yield spread
> premium paid by a lender, not simply the yield spread premium alone. Total
> compensation to the broker must be reasonably related to the total value of goods
> or facilities provided or services performed; "simply delivering a loan with a
> higher interest rate is not a compensable service." And payments must be
> commensurate with the amount normally charged for similar services in similar
> transactions in similar markets.

18    *Schuetz v. Bank One Mortgage Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002) (citations omitted).

19    The court was careful to point out that "'[c]ompensable services for the first part of the test do not

20    include referrals or no, nominal, or duplicative work.'" *Id.*, at 1011. In *Schuetz*, the court upheld

21    a YSP of $516 because 1) the evidence showed that the mortgage broker had provided the

22    borrower with a host of compensable goods, facilities and services, and 2) the record

23    demonstrated that the broker obtained for the borrower the best interest rate available at the time

24    for the borrower's specific needs. *Id.*, at 1014. [3] Based on the foregoing, the Court should not

---

[2] The regulation lists a number of services that can be considered; for example, a broker could analyze the prospective borrower's income and debt, educate the prospective buyer in the home buying process, or assist the buyer in identifying and clearing credit problems. Id. at 10085.

[3] Similarly, in Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201, 1208 (9th Cir. 2003), the broker's YSP was not a kickback because 1) the broker provided a host of compensable goods, facilities, and services that contributed

1  dismiss Mr. Reyes' RESPA claims.

2  **D.    HOLA Does Not Preempt Mr. Reyes' Business and Profession Code Section
           17200 Cause of Action**

3

4      Mr. Reyes has alleged that World Savings/Wachovia violated the California Business and

5  Professions Code section 17200 prohibitions against "unlawful," "unfair" or "fraudulent" business

6  acts or practices. UCL is a broad consumer protection law of general applicability. The statute

7  does not specifically focus on lending or deposit-taking activities. Moreover, the UCL applies to

8  *any* unfair or deceptive business act or practice. *Cel-Tech Communications, Inc. v. Los Angeles
   Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Barquis v. Merchants Collection Ass'n of Oakland*,

9

10 7 Cal. 3d 94, 111-112 (1972).

11     HOLA expressly exempts state laws that only incidentally affect the lending operations of

12 a federal savings association. 12 C.F.R. § 560.2(c) (listing the types of state laws that "are not

13 preempted to the extent that they only incidentally affect the lending operations of Federal

   savings associations or are otherwise consistent with the purposes of paragraph (a) of this
14
   section." These include contract, commercial, real property, tort and criminal law.). In *Gibson*,
15
   the court found that the duty to refrain from unfair business practices governed not only the
16
   lending business, but "anyone engaged in any business and anyone contracting with anyone else,"
17
   and therefore found that these duties neither purported to regulate federal savings associations,
18
   nor materially affected their credit activities to warrant preemption. *Gibson*, 103 Cal. App. 4th at
19
   1302. Mr. Reyes is not attempting to use the UCL to enforce a state law purporting to regulate
20
   the lending activities of a federal savings association; rather, Mr. Reyes is using UCL to enforce
21
   general duties imposed on all businesses operating in California, i.e., the duties to refrain from
22
   fraudulent and unfair business practices. Usage of state laws in this manner is not preempted.
23
   *See Mckell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1487 (2006).
24
       Here, Wachovia attempts to argue that Mr. Reyes' 17200 claim is preempted because it is
25
   predicated upon allegations of disclosure claims and that *Silvas v. E*Trade Mortgage*
26

27

28 to the borrower's loan transaction; 2) although the interest rate was not the best in the market, the borrower chose the
   interest rate; and 3) the total compensation to the broker was reasonably related to the services that were provided.

- 13 -

1   *Corporation* controls the present case. (Wachovia Mem. P & A. Mot. Dismiss at 15). However,

2   this argument misstates the nature of Mr. Reyes' UCL claims. Mr. Reyes has alleged that

3   Wachovia failed to consider his ability to repay the loan, misrepresented the terms of the loan,

4   and failed to provide him with required notices and copies of his loan documents. (Complaint ¶

5   83). Accordingly, Mr. Reyes' UCL claims are "incidental" to HOLA and not preempted under 12

6   C.F.R. § 560.2(c). *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1485 (2006)

7   ("[P]laintiffs here are using the UCL to enforce general duties imposed on all businesses

8   operating in California, i.e., the duties to refrain from fraudulent and unfair business practices.

9   As noted above, usage of state laws in this manner is not preempted."); *Lopez v. World Savings &*

10  *Loan Assn.* 105 Cal.App.4th 729, 741-742 (2003) ("UCL remains available to remedy a myriad of

11  potential unfair, unlawful and fraudulent practices engaged in by federally chartered savings and

12  loan associations, so long as the practice is outside the scope of federal regulation."); *Gibson v.*

13  *World Savings & Loan Assn.* 103 Cal.App.4th 1291, 1301 (2002) ("the duties of a contracting

14  party to comply with its contractual obligations and to act reasonably to mitigate its damages in

15  the event of a breach by the other party, ... not to misrepresent material facts, and ... to refrain

16  from unfair or deceptive business practices' upon which the claims in that case were based, 'are

17  not requirements or prohibitions of the sort that [section] 560.2 preempts'").

18          **E.     Mr. Reyes' Does Not Assert a Cause of Action for Fraud against Wachovia**

19          Mr. Reyes has not asserted a fraud claim against Wachovia. Thus, Mr. Reyes does not

20  respond to Wachovia's briefing with regard to Mr. Reyes' fraud claim against the broker

21  defendants.

22          **F.     Mr. Reyes' Complaint Sufficiently Pleads a Cause of Action against**
            **Wachovia for Negligence**
23

24          Wachovia contends that Mr. Reyes' cause of action for negligence against Wachovia

25  should be dismissed for the following two reasons: (1) HOLA preempts the application of

26  California law to a federally chartered bank's lending activities, and (2) that California law makes

27  clear that lenders do not owe borrowers any extra-contractual duty of care.

28

1

2

### 1. Mr. Reyes' Cause of Action for Negligence is Not Preempted by HOLA

3

4

5

6

7

As discussed above, pursuant to HOLA, "paragraph (c) of section 560.2 lists the types of state laws that 'are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section.' These include contract, commercial, real property, tort and criminal law." *McKell,* 142 Cal. App. 4th at 1487.

8

9

10

11

12

13

14

15

16

17

Here, Mr. Reyes' negligence cause of action is based on Defendants' failure to comply with all statutory requirements, including, but not limited to, California Civil Code 1632 and the Truth in Lending Act. Mr. Reyes seeks to enforce a general duty of reasonable care and skill in performing the mortgage brokering and lending services performed by World Savings/Wachovia and its agents. In addition, the Complaint alleges the existence of an agency relationship between the Defendants. Whether Mr. Reyes was knowingly or negligently misled, and by whom, is a question of fact and the law of torts. Mr. Reyes' negligence cause of action is not based on laws that attempt to regulate federal savings associations but on those that only incidentally affect the lending activities of a federal savings association, and pursuant to case law, survive Wachovia's preemption claim.

18

### 2. Mr. Reyes' is Owed a Duty of Care by Defendants

19

20

21

22

23

24

25

26

27

28

Wachovia asserts that lenders do not owe borrowers any extra-contractual duty of care. (Wachovia Mem. P & A Mot. To Dismiss at 20). While the determination of whether a general duty exists is a question of law, it is a fact-specific inquiry made on a case by case basis. *Dillon v. Legg,* 68 Cal. 2d 728, 734 (1968). In the instant case, Mr. Reyes' has alleged an agency relationship between Wachovia and the broker defendants. In *Ruiz v. Decision One Mortgage Company,* for example, this Court explained that liability under a theory of negligence may exist where the lender actively participates in the financed enterprise beyond the domain of the usual money lender. 2006 U.S. Dist. LEXIS 54571 at 8, citing *Wagner v. Benson,* 101 Cal. App.3d 27 (1980). "As a matter of law, allegations of agency, vicarious liability, and/or respondeat superior

- 15 -

1    are not required." *Id.* at 11, citing *Greenberg v. Sala* (822 F.2d 882, 886 (9th Cir. 1987). Thus, a

2    person legally responsible for an act may be alleged to have committed it without going into the

3    theories which support that ultimate fact. *Id.*

4        Here, the Complaint alleges that Wachovia went beyond the domain of its usual money

5    lender capacity and breached its duty to Mr. Reyes by misrepresenting and by failing to explain

6    the terms of the loan, by failing to provide a translation of the loan documents in Spanish, and by

7
8    failing to supervise its agents. *See Washington Mutual v, Superior Court*, 75 Cal. App. 4th 773,

9    786 (1999) allowing suit in negligence to proceed and finding no federal preemption); *Wanger v.*

10   *EMC Mortgage Corp.*, 103 Cal. App. 4th 1125 (2002)( overturning summary judgment for the

11   lender on, inter alia, claim for negligence based on lender's failure to give proper notice to

12   borrower). Wachovia may be found directly or secondarily liable for these acts. Accordingly,

13   Mr. Reyes' claim that defendant Wachovia acted negligently should not be dismissed.

14
15       **G.    Mr. Reyes voluntarily dismisses his unjust enrichment claim against Wachovia.**

16       Pursuant Federal Rule of Civil Procedure 41(a)(1), Mr. Reyes voluntarily dismisses his

17   unjust enrichment claim as to Wachovia.

18
19       **H.    Should the Court determine that Mr. Reyes has failed to properly allege any of the claims above, it should grant him leave to amend.**

20       Although Mr. Reyes contends that he has sufficiently pled his claims, he requests that the

21   Court grant him leave to amend the complaint if it finds any claim to be deficient. This request is

22   warranted as leave to amend is freely granted when to do so would not be futile. *Lilley v.*

23   *Charren*, 936 F. Supp. 708, 713 (N. D. Cal. 1996)(leave to amend granted unless to do so would

24   be futile).

25       **V.    CONCLUSION**

26       Mr. Reyes has adequately alleged his causes of action for violations of California Civil

27   Code Section 1632, California Business and Professions Code Section 17200, the Real Estate

28   Settlement Procedures Act, rescission, and negligence. Mr. Reyes agrees to voluntarily dismiss

- 16 -

1   his unjust enrichment claim against Wachovia.

2

3

4   Dated: March 2, 2009                    FAIR HOUSING LAW PROJECT

5

6                                           Annette D. Kirkham
7                                           Attorneys for Plaintiff
                                            BERNARDO REYES
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28