**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Bernardo Reyes, | NO. C 08-04606 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WACHOVIA'S MOTION TO DISMISS** |
| v. | |
| Premier Home Funding, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION

Berardo Reyes ("Plaintiff") brings this action against Premier Home Funding, Inc. ("Premier"), World Savings Bank, FSB[1] ("Wachovia"), Wachovia Bank, N.A. ("Wachovia Bank") and Joel Madera Candelario ("Candelario") (collectively, "Defendants"), alleging, *inter alia*, violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*., and the California Translation Law ("CTA"), Cal. Civ. Code § 1632. Plaintiff alleges that he obtained a mortgage by dealing with Defendants entirely in Spanish, and, because all of the loan documents were in English, he ultimately received a mortgage with less favorable terms than he had initially understood.

---

[1] Defendant World Savings Bank, FSB is a federal savings bank, chartered under 15 U.S.C. § 1464, whose primary regulator is the Office of Thrift Supervision of the Treasury Department, and who changed its name to Wachovia Mortgage, FSB on December 31, 2007. (Request for Judicial Notice ¶ 1, Exs. 1-3, Docket Item No. 12.)

Presently before the Court are Defendant Wachovia's Motion to Dismiss.[2]  The Court finds it appropriate to take the matter under submission without oral argument.  See Civ. L.R. 7-1(b).  Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

## II.  BACKGROUND

In a Complaint filed on October 3, 2008, Plaintiff alleges as follows:

Plaintiff is a forty-four year-old man of Mexican heritage who cannot speak or write any English.[3]  Defendant Premier is a California corporation.  (Complaint ¶ 2.)  Defendant Candelario is a citizen of California, and a representative of Premier who is not licensed as a real estate broker or salesperson in California.  (Id. ¶ 3.)  Wachovia Mortgage is a California corporation that regularly engages in the business of making mortgage loans.  (Id. ¶ 4.)

Plaintiff originally purchased his home located at 14030 Aldo Court, San Jose, California, in February 2000.  (Complaint ¶ 16.)  In August 2007, Plaintiff began discussing the possibility of refinancing his home with Candelario.  (Id. ¶¶ 18-19.)  All discussions were conducted in Spanish.  (Id. ¶ 19.)  Candelario informed Plaintiff and his wife that Plaintiff could refinance his home with a new loan that would give him a fixed monthly payment of less than $1,530, including principal and interest, for five years, a fixed interest rate for five years, no prepayment penalty, $30,000 cash and a limit of $4,000 in fees associated with the loan.  (Id. ¶ 23.)

---

[2]  (Notion of Motion and Motion to Dismiss by Wachovia Mortgage, FSB; Memorandum of Points and Authorities, hereafter, "Motion," Docket Item No. 10; Notice of Motion and Motion to Dismiss or For a More Definite Statement by Wachovia Bank, N.A., Docket Item No. 11.)  On October 2, 2009, Plaintiff filed a motion to voluntarily dismiss Defendant Wachovia Bank without prejudice.  (See Docket Item No. 32.)  On March 11, 2009, the Court granted Plaintiff's motion. (See Docket Item No. 35.)  Accordingly, Wachovia Bank's Motion to Dismiss is denied as moot.

[3]  (Complaint for Violations of the Truth in Lending Act; Real Estate Settlement Procedures Act; California Business & Profession Code § 17200; California Civil Code § 1632; and for Intentional Misrepresentation; Negligence; Unjust Enrichment & Rescission ¶¶ 11, 17, hereafter, "Complaint," Docket Item No. 1.)

2

Plaintiff agreed to refinance his home and provided Candelario with his salary information. (Complaint ¶ 25.) Defendants, without Plaintiff's knowledge, inflated his income and provided a false job title on his loan application form. (Id.) On October 5, 2007, without previously providing Plaintiff with any sort of Good Faith Estimate, Candelario informed Plaintiff that the loan documents were ready for him to sign. (Id. ¶ 27.) At around 9:30 p.m. that night, a man purporting to be a Notary Public arrived at Plaintiff's home with the loan documents, which were entirely in English. (Id. ¶¶ 30-31.) The man informed Plaintiff that his wife was waiting in the car and then summarized the loan documents in Spanish. (Id. ¶ 30.) Since the terms appeared to Plaintiff to be consistent with Candelario's previous statements, Plaintiff signed the loan documents. (Id. ¶ 32) On October 11, 2007, after the loan documents were signed, Candelario called Plaintiff's wife and told her that certain documents needed to be signed immediately for the loan to go through. (Id. ¶ 38.) Plaintiff's wife, following Candelario's instructions, went to Western Union and signed several English-language documents that turned out to be disclosures required under TILA. (Id. ¶ 39.)

The terms on the loan that Plaintiff actually received were different than what was promised to him by Candelario. (Complaint ¶ 33.) The loan contained the following terms: (1) a fixed interest rate for only one year, (2) four monthly payment options, the lowest of which was greater than $1,530 and did not cover the monthly accrued interest, and (3) a three-year prepayment penalty. (Id. ¶¶ 33-34.) The fees associated with the loan were $14,912.50, not $4,000. (Id. ¶ 35.) Wachovia Mortgage paid Premier $7,500 as a yield-spread premium. (Id.) The loan also provided a cash pay-out of $17,602.51, not $30,000. (Id. ¶ 36.)

On the basis of the allegations outlined above, Plaintiff alleges seven causes of action:

| Cause of Action | Defendants |
|---|---|
| (1) Violations of TILA, 15 U.S.C. §§ 1601, *et seq.* | Wachovia |

3

| | |
|---|---|
| (2) Violations of RESPA , 12 U.S.C. §§ 2601, *et seq.* | Premier, Candelario and Wachovia |
| (3) Violation of the CTA, Cal. Civ. Code § 1632 | All Defendants |
| (4) Fraud | Premier and Candelario |
| (5) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* | All Defendants |
| (6) Negligence | All Defendants |
| (7) Unjust Enrichment | All Defendants |

Presently before the Court is Defendant Wachovia's Motion to Dismiss.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533- 534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

### IV. DISCUSSION

Defendant Wachovia moves to dismiss each cause of action brought against it on the following grounds: (1) Plaintiff's claims under the CTA, Cal. Bus. & Prof. Code § 17200, and for negligence are preempted under the federal Homeowners' Loan Act of 1933 ("HOLA"), 15 U.S.C. §

4

1461; (2) Plaintiff has not adequately alleged the ability to tender repayment of his loan for rescission; (3) The CTA does not apply to Plaintiff's loan; (4) Plaintiff's RESPA claim lacks merit; and (5) Wachovia did not owe Plaintiff a duty of care as is necessary to state a claim for negligence.[4] The Court considers each issue in turn.

**A.     HOLA Preemption**

Pursuant to the Supremacy Clause of Article VI, clause 2, of the United States Constitution, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Bank of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). In the field of banking, Congress has created "an extensive federal statutory and regulatory scheme." Id. As part of this extensive federal scheme, Congress enacted HOLA during the Great Depression, a time when a record number of home loans were in default and state-chartered savings associations were insolvent. Silvas v. E*Trade Mortgage Co., 514 F.3d 1001, 1004 (9th Cir. 2008). The purpose of HOLA was to charter savings associations under federal law as a means of restoring public confidence through a nationwide system of savings and loan associations that are centrally regulated according to nationwide "best practices." Id. (citing Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61 (1982)).

The Ninth Circuit describes "HOLA and its following agency regulations as a radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." Silvas, 514 F.3d at 1004 (internal quotations omitted). Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing federal savings associations.[5] 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005.

---

[4] Plaintiff voluntarily dismisses his unjust enrichment claim against Wachovia. (Plaintiff Bernardo Reyes' Opposition to Defendant Wachovia Mortgage, FSB's Motion to Dismiss Plaintiff's Complaint at 16, hereafter, "Opposition," Docket Item No. 31.)

[5] Federal regulations have no less preemptive effect than federal statutes. Fidelity Fed. Sav. and Loan Assoc. v. de la Cuesta, 458 U.S. 141, 153 (1982).

5

Under 12 C.F.R. § 560.2(b), the OTS has listed numerous types of state laws that are preempted, including

> state laws purporting to impose requirements regarding . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.

However, under 12 C.F.R. § 560.2(c), "state laws of general applicability [such as contract and commercial law] only incidentally affecting federal savings associations are not preempted." Silvas, 514 F.3d at 1006.

The Ninth Circuit has adopted the OTS's general framework for analyzing whether HOLA preempts a state law:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)).

**1.     Whether Plaintiff's CTA claim is Preempted by HOLA**

Defendant Wachovia contends that the CTA is preempted under 12 C.F.R. § 560.2 because it imposes requirements on the content of credit-related documents that must be disclosed by Wachovia. (Motion at 5.)

Regula12 C.F.R. § 560.2(b)(9) expressly preempts state laws imposing requirements on federal savings associations regarding "disclosure . . . including laws requiring specific statements, information, or other content . . . ." The CTA provides in relevant part:

> Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement.

6

Cal. Civ. Code § 1632(b). The CTA applies to contracts concerning a wide range of contexts, including personal loans, leases and other rental contracts, and contracts for legal services. See Cal. Civ. Code § 1632(b)(1)-(6).

As applied in this case, the Court finds that the requirements of the CTA are not preempted by § 560.2(b)(9) under step one of the preemption analysis. The CTA is not a state law seeking to require any sort of "disclosure." The CTA requires a translation of the contract; it does not require any specific statements, information or other content to be disclosed.

Under step two of the analysis, the Court finds that the CTA does affect lending. Section 1632(b)(2) and (b)(4) expressly require a translation for contracts regarding "a loan or extension of credit." This requirement makes the CTA presumptively preempted. However, the CTA clearly falls within the limitation on preemption contained in 12 C.F.R. § 560.2(c), which excepts generally applicable "contract and commercial laws" that only affect lending incidentally. See Silvas, 514 F.3d at 1006. The CTA applies generally to all businesses, not just lending institutions, engaging in a wide range of commercial contracts that extend beyond lending. See Cal. Civ. Code § 1632(b)(1), (3), (6). Thus, the Court finds the CTA is a generally applicable law under 12 C.F.R. § 560.2(c) and not preempted under HOLA.

Accordingly, the Court DENIES Defendant Wachovia's Motion to Dismiss Plaintiff's Third Cause of Action for violations of the CTA on the ground that it is preempted.

**2.      Whether Plaintiff's Unfair Competition and Negligence Claims are Preempted**

Defendant Wachovia contends that Plaintiff's claims for unfair completion and common law negligence are preempted by HOLA because Plaintiff bases his claims on violations of other statutes regulating lending disclosures, namely TILA, RESPA and the CTA. (Motion at 14-15.)

In determining whether a § 17200 claim is preempted under the OTS's framework, a court must consider how the unfair competition law is applied. Silvas, 514 F.3d at 1006. If a plaintiff's unfair competition claim is based on violations of federal statutes governing lending, then the unfair competition claim is preempted because to hold otherwise would allow a plaintiff to obtain a remedy

7

under state law that does not exist under federal law. See Silvas, 514 F.3d at 1006-07, 1007 n.3 (holding that an unfair competition claim based on violations of TILA was preempted). However, if a plaintiff's unfair competition claim is based on a generally applicable state-law remedy that only incidentally affects lending, then his claims are not preempted. See Gibson v. World Savings & Loan Ass'n, 103 Cal. App. 4th 1291, 1302 (2002) (holding that an unfair competition claim based on California's common law claim for restitution was not preempted). Similarly, a negligence claim is preempted if it seeks to impose requirements covered by HOLA on a federal savings association. Cosio v. Simental, No. CV 08-6853 PSG, 2009 WL 201827, at *4-5 (C.D. Cal. Jan. 27, 2009) (citing Silvas).

With respect to unfair competition claim, Plaintiff bases this claim on violations of TILA, RESPA and the CTA. (Complaint ¶ 84.) Under Silvas, Plaintiff's unfair competition claims are preempted to the extent they are based on violations of TILA and RESPA. Since TILA governs the disclosures that are required for certain loans, an unfair competition claim based on TILA is within the preempted category of state laws regulating loan "disclosures" under step one of the OTS framework. See 12 C.F.R. § 560.2(b)(9). Since RESPA governs the fees that are prohibited in connection with certain loans, an unfair competition claim based on RESPA is within the preempted category of state laws regulating "loan-related fees" under step one of the OTS framework. See 12 C.F.R. § 560.2(b)(5). However, to the extent Plaintiff's unfair competition claim is based on violations of the CTA, the Court finds Plaintiff's claim is not preempted. As discussed above, the CTA is a generally applicable state law that only incidentally affects lending. Thus, an unfair competition claim based on the CTA is not preempted under HOLA.

With respect to Plaintiff's negligence claim, he alleges the following:

> Defendants breached their duties of care . . . in performing their mortgage brokering and lending services by, among other things: failing to explain the material terms of the refinance transaction and loan agreement, failing to ensure that [Plaintiff] understood the material terms of the transaction and loan agreement, failing to provide a translation of the loan documents in Spanish; failing to submit truthful financial information, evaluate and confirm the accuracy of such financial information; and failing to provide [Plaintiff] with copies of the Right to Cancel Notice.

8

(Complaint ¶ 89.) Plaintiff concedes that his negligence claim is "based on Defendants' failure to comply with all statutory requirements, including, but not limited to, [the CTA] and [TILA]." (Opposition at 15.) Thus, to the extent Plaintiff's negligence claim seeks to impose the requirements of TILA or other disclosure laws on Wachovia, his claim is preempted. However, as with his unfair competition claim, Plaintiff's negligence claim is not preempted to the extent it is premised on violations of the CTA.

Accordingly, the Court GRANTS in part and DENIES in part Wachovia's Motion to Dismiss Plaintiff's Fifth and Sixth Causes of Action for Unfair Competition and Negligence.

### B.  **Applicability of the CTA to Plaintiff's Loan**

Defendant Wachovia contends that, regardless of preemption, Plaintiff's claim under the CTA should be dismissed because (1) the CTA does not apply to loans secured by real property of more than $30,000, and (2) the CTA does not apply to federal savings associations. (Motion at 8-9.)

#### 1.  **Applicability of the CTA to Loans Secured by Real Property**

Section 1632(b)(2) specifically excludes loans secured by real property, like the type of loan at issue in this case. However, § 1632(b)(4) contains an exception, which provides that CTA applies to "a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provision of Article 7 (commencing with Section 10240) of Chapter 3 of Part I of Division 4 of the Business and Professions Code . . . ." Article 7 of the California Business and Professions Code, in turn, applies to certain loans secured by real property that are negotiated by a real estate broker. See Cal. Bus. & Prof. Code, § 10240. A "real estate broker" is defined as

> a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: . . . (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity.

Cal. Bus. & Prof. Code § 10131.

9

In this case, Plaintiff alleges that although Candelario was not licensed as a real estate broker, he represented to Plaintiff that he was a mortgage broker and performed some services for Plaintiff and Wachovia in connection with Plaintiff's refinance loan. (Complaint ¶¶ 3, 11-15.) Plaintiff's loan was therefore negotiated by a real estate broker as defined under the provisions of the California Business and Professions Code. See Cal. Bus. & Prof. Code § 10131. As such, the Court finds the CTA applies to Plaintiff's loan under the circumstances alleged in the Complaint.

**2.     Applicability of the CTA to Federal Savings Associations**

Defendant Wachovia contends that it is excluded from the definition of "supervised financial organization" under § 1632(e), and therefore the CTA is inapplicable.

Under § 1632(e) of the CTA, "[p]rovision by a supervised financial organization of a translation of the disclosures required by Regulation M or Regulation Z [under TILA] . . . shall also be deemed compliance with the requirements of subdivision (b) with regard to the original contract or agreement." This provision of the CTA provides "supervised financial organizations" an alternative means for satisfying the requirements of § 1632(b). Under § 1632(e)(2), a "supervised financial organization" means "a bank, savings association as defined in Section 5102 of the [California] Financial Code . . . ." Under Cal. Fin. Code § 5102, a "savings association" means "a mutual or stock savings association, savings and loan association or savings bank subject to the provisions of this division, but excluding a federal association." A "federal association" under § 5102 means "a savings and loan association or federal savings bank that is chartered by the Office of Thrift Supervision under [HOLA, 12 U.S.C. § 1464]."

Defendant Wachovia is chartered by the Office of Thrift pursuant to 12 U.S.C. § 1464. (Motion at 3.) Thus, Wachovia is a federal association under Cal. Fin. Code § 5102. As a federal association under § 5102, Wachovia is excluded from the definition of a "savings association" under § 5102, and therefore also excluded from the definition of a "supervised financial organization" under CTA § 1632(e). Thus, § 1632(e) exemption does not apply to Wachovia.

10

Accordingly, the Court DENIES Wachovia's Motion to Dismiss as to Plaintiff's Third Cause of Action for Violations of the CTA.

### C. First Cause of Action for Violations of TILA

Defendant Wachovia moves to dismiss Plaintiff's First Cause of Action for violations of TILA on the ground that Plaintiff's request for rescission is not viable because he has not tendered repayment of the loan and has not alleged the ability to do so. (Motion at 12.)

Under TILA, a borrower has two remedies for loan disclosure violations. TILA gives a borrower the right to rescind any credit transaction in which a security interest is created in the borrower's home. 15 U.S.C. § 1635. TILA also gives a borrower a right to civil damages. 15 U.S.C. § 1640. A claim for rescission must be brought within three years "after the date of consummation of the transaction or upon sale of the property, whichever occurs first," while a claim for damages must be brought within one year "from the date of the occurrence of the violation." 15 U.S.C. §§ 1635(f), 1640(e).

For a rescission claim, TILA establishes the following framework:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. 1635(b); see also 12 C.F.R. § 226.23(d). However, the Ninth Circuit has held that TILA's framework gives a trial court discretion to condition rescission on a tender by the borrower of the property, or the property's reasonable value, to the lender. Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003).

11

Here, Plaintiff seeks rescission, among other remedies, of Plaintiff's refinance loan. (Complaint at 16.) Notably absent from Plaintiff's Complaint is any allegation that he attempted to tender, or are capable of tendering, the value of the property pursuant to the rescission framework established by TILA. Nor do Plaintiff alleges that such equitable circumstances exist that conditioning rescission on any tender would be inappropriate. Thus, the Court finds that Plaintiff has failed to adequately allege that he is entitled to rescission under TILA.

Accordingly, the Court GRANTS Defendant Wachovia's Motion Dismiss Plaintiff's First Cause of Action for violations of TILA with leave to amend.

### D.     Second Cause of Action for Violations of RESPA

Defendant Wachovia moves to dismiss Plaintiff's Second Cause of Action for violations of RESPA on the ground that the yield spread premium paid by Wachovia to Premier was lawful. (Motion at 12-13.)

RESPA prohibits the giving or receiving of referral fees or kickbacks as part of a real estate settlement service; however, fees paid for services actually performed in the making of a loan are permissible. 12 U.S.C. § 2607(a), (c)(2). The Ninth Circuit has adopted the two-part test articulated by the Department of Housing and Urban Development ("HUD") for determining whether payments from a lender to a mortgage broker are permissible under RESPA.[6] Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1005-06 (9th Cir. 2002); Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201 (9th Cir. 2003). First, the payment must be for goods actually furnished or services actually performed. Schuetz, 292 F.3d at 1005. Second, the payment must be reasonably related to the value of the goods actually furnished or services actually performed. Id. Under the first prong, HUD considers payments to a mortgage broker justified if the broker takes the application information and

---

[6] The Secretary of Housing and Urban Development is authorized to prescribe rules and regulations and make interpretations of RESPA. 12 U.S.C. 2617(a).

performs at least five additional items specified in HUD's list of compensable services.[7] Under the second prong, direct and indirect fees, including yield-spread premiums,[8] are permissible if the total compensation provided to the mortgage broker is reasonable. Schuetz, 292 F.3d at 1005; Bjustrom, 322 F.3d at 1208.

In this case, Plaintiff alleges that Wachovia paid Premiere a yield spread premium of $7,500. (Complaint ¶ 35.) Plaintiff further alleges that this payment was an illegal kickback or an illegal split of settlement service fees in violation of §§ 2607(a) and (b) of RESPA. (Id. ¶ 70.) While Defendant contends that the $7,500 fee was a reasonable fee for services rendered to Wachovia under § 2607(c), such a determination is a question of fact subject to evidence at a later stage in this litigation. Taking Plaintiff's allegations to be true, Plaintiff has adequately stated a claim against Wachovia for violations of RESPA.

Accordingly, the Court DENIES Defendant Wachovia's Motion to Dismiss as to Plaintiff's Second Cause of Action for violations of RESPA.

---

[7] HUD Policy Statement 1999-1: Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080, 10085 (March 1, 1999)). The list includes: (a) taking information from the borrower and filling out the application; (b) analyzing the borrower's income and debt and pre-qualifying him to determine the maximum mortgage that he can afford; (c) educating the borrower in the home buying and financing processes, advising him about the different types of loan products available, and demonstrating how closing costs and monthly payments could vary under each product; (d) collecting financial information such as tax returns, bank statements, and other related documents that are part of the application process; (e) initiating/ordering verifications of employment and verifications of deposit; (f) initiating/ordering requests for mortgage and other loan verifications; (g) initiating/ordering appraisals; (h) initiating/ordering inspections or engineering reports; (i) providing disclosures (truth in lending, good faith estimate, others) to the borrower; (j) assisting the borrower in understanding and clearing credit problems; (k) maintaining regular contact with the borrower, realtors, and lender between application and closing; (l) ordering legal documents; and (n) participating in the loan closing. Id.

[8] A yield-spread premium is a cash rebate paid to a mortgage broker based on selling an interest rate above the wholesale par rate for which the borrower qualifies, i.e., the broker receives compensation for getting the borrower to accept a higher interest rate than the borrower would otherwise be entitled to. Bjustrom, 322 F.3d at 1204 n.2.

### E. Sixth Cause of Action for Negligence

Defendant Wachovia contends that it did not owe Plaintiff a duty of care because its conduct did not exceed its role as merely a lender for Plaintiff's refinancing loan. (Motion at 20.)

Under California law, a lender generally owes no duty of care to a borrower. Nymark v. Heart Federal Savings & Loan Ass'n, 231 Cal. App. 3d 1089, 1095 (1991). However, negligence liability can arise when the lender actively participates in the negotiations of a loan, including through a broker as the lender's agent. Plata v. Long Beach Mortgage Co., No. C 05-02746 JF, 2005 WL 3417375, at *7-8 (N.D. Cal. 2004) (collecting various California cases). Although a broker is customarily retained by the buyer, courts have rejected a bright line rule that a mortgage broker may never be the agent of a lender. Id. at *8. Accordingly, general allegations of agency between a broker and lender are sufficient to survive a motion to dismiss on a negligence claim under California law. Id.

Here, Plaintiff alleges that "each of the Defendants was the agent, servant and/or employee of each other defendant. . . . [E]ach Defendant was acting within the course and scope of such agency or employment in doing the things alleged." (Complaint ¶ 6.) However, Plaintiff does not allege that Defendants actively participated in an enterprise financed by the loan at issue in this case. Thus, the Court finds that Plaintiff has failed to adequately allege that Defendants owed Plaintiff a duty of care.

Accordingly, the Court GRANTS Defendant Wachovia's Motion to Dismiss Plaintiff's Sixth Cause of Action for Negligence.

### V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant Wachovia's Motion to Dismiss. The Court DENIES Wachovia's Motion as to Plaintiff's claims for violations of the CTA, and violations of RESPA. The Court GRANTS Wachovia's Motion as to Plaintiff's claims for unfair competition and negligence on preemption grounds to the extent they are based on violations of TILA, RESPA or other laws specifically regulating lending. Since such claims are preempted,

dismissal is with prejudice.  However, the Court DENIES Wachovia's Motion as to Plaintiff's claims for unfair competition to the extent they are based on violations of the CTA.  The Court GRANTS Plaintiff leave to amend his negligence and TILA claims.

On or before **June 29, 2009**, Plaintiff shall file his Amended Complaint consistent with the direction of this Order.

The parties shall appear for a Case Management Conference on **July 6, 2009 at 10 a.m.**  On or before **June 26, 2009**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, a good faith discovery plan with a proposed date for the close of all discovery.

Dated:  June 17, 2009

JAMES WARE
United States District Judge

15

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Annette D. Kirkham annettek@lawfoundation.org
Christopher Alan Carr ccarr@afrct.com
Frederick James Hickman fhickman@afrct.com
Kimberly Pederson kimp@lawfoundation.org
Mark Tyler Flewelling mtf@afrct.com

Dated: June 17, 2009                              Richard W. Wieking, Clerk

                                                  By:   /s/ JW Chambers
                                                        Elizabeth Garcia
                                                        Courtroom Deputy